IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRACY LANE BEATTY, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | 4:22-CV-03658 |
| BRYAN COLLIER | § | |
| Executive Director, Texas | § | |
| Department of Criminal Justice | § | **CAPITAL CASE** |
| | § | |
| BOBBY LUMPKIN, | § | |
| Director, Texas Department of | § | EXECUTION SCHEDULED FOR |
| Criminal Justice, Correctional | § | NOVEMBER 9, 2022 |
| Institutions Division, | § | |
| | § | |
| DANIEL DICKERSON | § | |
| Senior Warder, Polunsky Unit | § | |
|     Defendants. | § | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Pursuant to a judgment and sentence of death out of Smith County, Texas, Plaintiff Tracy Lane Beatty's execution is scheduled for November 9, 2022. On October 22, 2022, Plaintiff filed a Complaint for Violation of Civil Rights under 42 U.S.C. § 1983. ECF 1. This was followed by Plaintiff's Opposed Motion for Preliminary Injunction on October 25, 2022. ECF 6. That same day, this Court entered an order that directed Plaintiff to file a brief to show cause for not dismissing or staying the suit. ECF 8. The Court ordered the Plaintiff to address six issues:   1) Parallel litigation, 2) Timing, 3) Mootness, 4)

Constitutional Basis, 5) Statutory Basis, and 6) Exhaustion, by the close of business on October 28, 2022. ECF 8. Plaintiff complied with the order. ECF 10. Pursuant to the Court's order, the Defendants file this Response in Opposition to Plaintiff's Motion for Preliminary Injunction.[1]

## PROCEDURAL BACKGROUND

Tracy Lane Beatty was found guilty of the capital murder of his mother, Carolyn Click, and sentenced to death. After his state postconviction proceedings proved unsuccessful, Beatty filed a federal petition for writ of habeas corpus in the Eastern District of Texas. *Beatty v. State*, No. AP-75010, 2009 WL 619191 (Tex. Crim. App. Mar. 11, 2009).; *Ex parte Beatty*, No. WR-59,939-02, 2009 WL 1272550, at *1 (Tex. Crim. App. May 6, 2009) (per curiam); In July of 2013, the district court denied his petition. Beatty filed a motion for reconsideration and requested a new attorney on appeal. The district court denied the motion for reconsideration but granted the request for a new attorney on the appeal. Therefore, Beatty's current attorney, Scott Smith, was appointed on August 30, 2013. Three months later, Beatty sought a certificate of appealability (COA) from the Fifth Circuit Court of Appeals. *Beatty v. Stephens*, 759 F.3d 455 (5th Cir. 2014). His COA application was rejected. *Id.* at 468. Beatty filed a petition for panel rehearing which was denied on

---

[1] The Defendants are filing a response to the Court's Order to Show Cause and Plaintiff's Brief in Response under a separate cover this day.

2

November 3, 2014. On Petition for Rehearing at 2, *Beatty v. Stephens* (No. 13-70026) (5th Cir. Nov. 3, 2014).

After the Supreme Court's decision in *Christeson v. Roper*, 574 U.S. 373, (2015), Beatty filed a motion asking the Fifth Circuit Court of Appeals to recall its mandate in light of the decision. Opposed Motion to Recall the Mandate, *Beatty v. Stephens* (No. 13-70026) (Jan. 30, 2015). The Fifth Circuit Court of Appeals denied the motion. *Beatty v. Stephens*, 759 F.3d 455 (5th Cir. 2015). Beatty petitioned the Supreme Court for a writ of certiorari, but that petition was also denied. *Beatty v. Stephens*, 575 U.S. 1011 (2015).

At this point, Beatty's execution was set for August 13, 2015. *See Beatty v. Davis,* 755 Fed. Appx. 343, 346 (5th Cir. 2018). However, despite the fact that the CCA ultimately dismissed the application as an abuse of the writ, Beatty successfully delayed justice by filing another state habeas application a mere seven days before he was scheduled to be put to death. *Ex parte Beatty*, No. WR-59,939-03, 2015 WL 6442730 (Tex. Crim. App. Oct. 14, 2015).

In October of 2015, Beatty returned to federal court and filed a Rule 60(b) motion. The motion and a COA were denied. Then, Beatty filed a motion in the district court to alter or amend the judgment under Rule 59(e) which was also denied. Beatty sought a COA on the district court's denial of Rule 60(b) relief. The Fifth Circuit Court of Appeals denied COA on November 12, 2018. *Beatty v. Davis,* 755 Fed. Appx. 343, 346 (5th Cir. 2018). The Supreme Court denied

a petition for writ of certiorari on October 7, 2019. *Beatty v. Davis*, 140 S. Ct. 54 (2019).

Then, Beatty was given another execution date of March 25, 2020, but, on March 19, 2020, the execution was stayed due to the existing "health crisis and the enormous resources needed to address that emergency. *In re Beatty*, No. WR-59,939-04, 2020 WL 1329145 (Tex. Crim. App. Mar. 19, 2020).

On June 10, 2022, the Honorable Jack Skeen, Jr. signed an order setting Beatty's execution for November 9, 2022. Nearly 3 months later, on September 2, 2022, Beatty filed an opposed motion to compel the Texas Department of Criminal Justice to unshackle Beatty's hands during a contact visit with defense experts. The Director responded and Beatty filed a reply. On September 16, 2022, the district court entered an order dismissing Beatty's motion for lack of jurisdiction. Beatty's experts evaluated him in-person on September 19 and 22, 2022. Beatty filed a notice of appeal on September 28. On October 21, Beatty filed his brief on appeal and a motion for stay of execution. The Director filed his brief on appeal and response in opposition to the motion for stay of execution on October 28, 2022.

As noted above, one day after filing his brief on appeal and a motion to stay in the Fifth Circuit, the Plaintiff filed his § 1983 suit in this Court and, three days after that, his motion for preliminary injunction. ECF 1, 6. As this Court and Plaintiff have noted, the present litigation and the litigation

4

currently pending in the Fifth Circuit rest on the same factual bases. ECF 8 at 2, ECF 10 at 9.

## ARGUMENT

### I.    Standard of review

"Filing an action that can proceed under § 1983 does not entitle the [plaintiff] to an order staying an execution as a matter of course." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.* (citing *Nelson*, 541 U.S. 637, 649–50 (2004)). "It is well-established that petitioners on death row must show a "reasonable probability" that the underlying issue is "sufficiently meritorious" to warrant a stay and that failure to grant the stay would result in "irreparable harm." *Barefoot v. Estelle*, 463 U.S. 880, 895 (1983), superseded on other grounds by 28 U.S.C. § 2253(c)(2). Indeed, "[a]pplications for stays of death sentences are expected to contain the information and materials necessary to make a careful assessment of the merits of the issue and so reliably to determine whether plenary review and a stay are warranted." *Id.* To demonstrate an entitlement to a stay, a petitioner must demonstrate more than "the absence of frivolity" or "good faith" on the part of petitioner. *Id.* at 892–93. Rather, the petitioner must make a substantial showing of the denial of a federal right. *Id.* In a capital case, a court

may properly consider the nature of the penalty in deciding whether to grant a stay, but "the severity of the penalty does not in itself suffice." *Id.* at 893. The State's "powerful and legitimate interest in punishing the guilty," as well as its interest in finality, must also be considered, especially in a case such as this where the State and victims have for years borne the "significant costs of federal habeas review." *Herrera v. Collins*, 506 U.S. 390, 421 (1993) (O'Connor, J., concurring); *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (both the State and the victims of crime have an important interest in the timely enforcement of a sentence).

Thus, in deciding whether to grant a stay of execution, the Court must consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also Buxton v. Collins*, 925 F.2d 816, 819 (5th Cir. 1991).

## II.  Plaintiff Has Not Made a Strong Showing That He Will Succeed on the Merits.

Plaintiff fails to show that there is a significant possibility that he will succeed on the merits of any of his legal theories.

However, all of Plaintiff's claims suffer from a fatal procedural defect—his failure to exhaust his administrative remedies. Plaintiff entirely fails to address this obvious defect in his motion for preliminary injunction. Plaintiff does address the matter as required by this Court in his brief in response to the order to show cause. *See* ECF 10 at 21–23. The first thing he argues is that "exhaustion is an affirmative defense that does not need to be pled in a complaint." ECF 10 at 21. However, as it is directly relevant to the question of whether he can make a strong showing that his claims will be meritorious, his failure to address the fatal flaw here is glaring. As the Plaintiff failed to address exhaustion here, the Defendants address the matter more thoroughly in their response to the order to show cause. Nonetheless, the failure to exhaust administrative remedies proves that the Plaintiff's claims are not likely to succeed and this motion for preliminary injunction can be denied on this basis alone.

### A. Plaintiff is not being arbitrarily treated as a class of one nor is he being discriminated against due to his gender.

Plaintiff's first claim is based upon an allegation that the Defendants have treated him differently than all other similarly situated death row prisoners. ECF 1 at 16–17, ECF 6 at 15–17. Plaintiff's second claim is that he is being denied equal protection under the law due to his gender. ECF 1 at 17–18, ECF 6 at 17–18. Both of these allegations are untrue.

Concerning, "class of one" equal protection claims such as Plaintiff's first argument, the Supreme Court has "long held the view that there is a crucial difference, with respect to constitutional analysis, between the government exercising 'the power to regulate or license, as lawmaker,' and the government acting "as proprietor, to manage [its] internal operation.'" *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 598 (2008) (alteration in original) (quoting *Cafeteria & Rest. Workers v. McElroy*, 367 U.S. 886, 896 (1961)).

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* at 603. As demonstrated below, although Plaintiff has not been arbitrarily singled out, his situation is *not* similar to other identified death row prisoners and Defendants properly exercised its discretion under the circumstances.

According to Plaintiff he "is similarly situated to other identified death row prisoners who received unhandcuffed expert evaluations without a court order." ECF 6 at 16. Plaintiff points to inmates Melissa Lucio, Stephen Barbee, Dexter Johnson, Randall Mays, and Danny Bible. However, there are important distinctions between his case and that of other inmates that Plaintiff

8

has repeatedly ignored. First, Plaintiff has not alleged that other inmates were allowed unhandcuffed expert evaluations when those inmates had completed state and federal postconviction review and there was no pending litigation. Second, Plaintiff ignores the change in the legal precedent that took place at the end of June this year. As Defendant Lumpkin has pointed out in the litigation pending in the Fifth Circuit, "the Supreme Court's recent decisions in *Shinn v. Martinez Ramirez* and *Shoop v. Twyford* make clear that a federal district court has 'a very narrow role' on habeas review of a state conviction." ECF 74 at 6 (citing *Shinn v. Martinez Ramirez*, 142 S. Ct. 1718, 1731 (2022); *Shoop v. Twyford*, 142 S. Ct. 2037, 2045 (2022)). Specifically, in *Twyford* the Supreme Court reversed the Sixth Circuit and held that commanding a State to take risks to allow an inmate to attempt to develop evidence of indiscernable value is not "a necessary or appropriate means of aiding a federal court's limited habeas review." *Twyford*, 142 S. Ct. at 2045. These changes in law significantly curtailed federal court authority to interfere with state correctional security policies. And they empowered the Defendants, and Defendant Lumpkin specifically, to more vigorously assert those concerns by providing the binding legal precedent to support a challenge in court. *See Wood v. Collier,* 836 F.3d 534, 541 (5th Cir. 2016) (denying stay of execution for class-of-one equal protection claim because the State's strategic legal decision in one case, in the context of an ever-changing array of suits attacking its use of

capital punishment from all angles, is within the discretion inherent under *Engquist*). All of the other death row inmates Plaintiff identifies were examined prior to the decision in *Twyford*.[2]

Additionally, Plaintiff's long history of disciplinary problems distinguishes him from other death row inmates. *See* Exhibit A (Disciplinary Records from August 13, 2004 to Present for Beatty, Tracy). In fact, Plaintiff's disciplinary record contains more than forty violations in the last eighteen years, including multiple assaults on correctional officers, threats of violence, disobeying orders, possession of contraband, using his arms and legs to cause various problems with access to his cell, self-inflicted injuries, and public masturbation. That Defendants would have heightened security concerns about unshackling Plaintiff's hands in light of his history of violent and incorrigible behavior should come as no surprise.

Further, Plaintiff points to the inmate Melissa Lucio as evidence that he is being discriminated against because of his gender. A misleadingly phrased declaration from Lucio's attorney makes it appear as though TDCJ allowed an unrestrained, contact visit between Lucio and an expert. ECF 1-1 at 22. However, this is not the case. Ultimately, Lucio's hands were not restrained when evaluated by the neuropsychologist; however, this was during a *non-*

---

[2] Randall Mays-2019; Dexter Johnson-2019; Danny Bible-2018; Melissa Lucio-February/March 2022; Stephen Barbee-2021.

*contact* visit. *See* Exhibit B (Affidavit of Warden Andrea Lozada). Mountainview Unit Warden Lozada explains that Lucio was in a holding cell separated from the expert by "expanded metal." *See* Exhibit C (photographs of Mountainview Unit holding cell). So, while her hands were not cuffed, she was not in the same physical space as the expert. Had Plaintiff bothered with any attempt at informal resolution before seeking a federal court order, or attempted to exhaust the administrative grievance process, such an accommodation might have been reached which would have eliminated the need for a lawsuit and more importantly a stay of execution.

In short, Plaintiff has not, and cannot, point to an instance where he is being treated differently than other inmates whose situations are similar to his on these significant factors.

### C.   Plaintiff does not have a constitutional right to unrestrained expert evaluations.

Plaintiff has not offered any precedent to support an argument that he has a constitutional right to unrestrained expert evaluations based on any of his theories—due process, access to counsel, or access to the courts.

First, Plaintiff does not have a due process right to clemency. Clemency is an act of executive grace. . "[P]ardon and commutation decisions are rarely, if ever, appropriate subjects for judicial review." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 276 (1998) (Rehnquist, J.C., with three justices joining

and four justices concurring in result) (citing *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981)). While Plaintiff accurately notes that if states establish a clemency process, they must establish some "minimal procedural safeguards."[3] *Ohio Adult Parole Authority v. Woodard,* 523 U.S. 272, 289 (1998). However, there is nothing to suggest that expert evaluations, much less unrestrained expert evaluations, are a necessary aspect of these safeguards. As Plaintiff was permitted to have two experts examine him in advance of the filing of his clemency application, he cannot reasonably argue that he has been subject to "an unwarranted wholesale bar" to the presentation of evidence in his clemency application to suggest intellectual disability. The preliminary reports of Plaintiff's experts adequately lay out this concern.

Second, complaints that Plaintiff is being denied access to counsel or the courts are undoubtedly false. No one is denying Plaintiff the ability to contact or visit counsel. No one is denying Plaintiff the ability to be examined by experts. As is obvious in Plaintiff's pleadings before this Court, he has been examined by two experts. The Defendants have not denied Plaintiff access to

---

[3] Those minimal safeguards are not specified, except to cite flipping a coin or arbitrarily denying *any* access to the clemency process as examples of situations warranting judicial intervention. The Fifth Circuit has also interpreted the due process requirements in clemency cases narrowly. *See Faulder v. Johnson*, 178 F.3d 343, 344–45 (1999); *Tamayo v. Perry*, 553 F. App'x 395, 400 (5th Cir. 2014); *Turner v. Epps*, 460 F. App'x 322, 331 (5th Cir. 2012) (per curiam); *Roach v. Quarterman*, 220 F. App'x 270, 275 (5th Cir. 2007); *Sepulvado v. La. Bd. of Pardons & Parole*, 171 F. App'x 470, 472–73 (5th Cir. 2006) (per curiam).

his attorney or experts. They have simply instituted rules that establish parameters to manage the inherent risks in facilitating visitation between convicted and proven-dangerous murderers and outside parties. *See* Rules Governing Inmate Access to the Courts, Counsel, and Public Officials, BP-03.81 (rev. 5) (Aug. 27, 2021), § V, https://tdcj.texas.gov/documents/policy/BP0381.pdf.

Moreover, precedent suggests that an inmate must demonstrate a constitutional right to counsel to complain of counsel's absence. *See Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982) ("Since [he] had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel. . ."). The Fifth Circuit has explained that "[t]he Sixth Amendment right to counsel only 'extends to the first appeal of right, and no further.'" *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)); *see also Murray v. Giarratano*, 492 U.S. 1, 8–10 (1989) (rejecting claim that "a death sentence [cannot] be carried out while a prisoner is unrepresented").

Plaintiff's access-to-courts claim fails for a similar reason. A claim based on access to courts is premised on there being an underlying basis for relief. The Fifth Circuit has noted that when "plaintiffs have not succeeded in pleading an underlying claim, their access-to-the-courts assertion fails as well." *Whitaker*, 862 F.3d at 501 (citing *Whitaker v. Livingston*, 732 F.3d 465,

467 (5th Cir. 2013)). Clearly, as evidence by the currently pending parallel litigation initiated by Plaintiff, he is not being denied access to the courts. Finally, clemency is an executive function, not a judicial one.

## III.  Plaintiff Will Not Be Irreparably Injured If His Motion is Not Granted.

Plaintiff argues that his execution constitutes irreparable harm. ECF 6 at 26. In a capital case, a court may properly consider the nature of the penalty in deciding whether to grant a stay, but "the severity of the penalty does not in itself suffice." *Barefoot*, 463 U.S. at 893. Moreover, this is a § 1983 case, which means that Plaintiff necessarily does not challenge the validity of his sentence (otherwise, he would simply be filing a prohibited successive habeas petition). If Plaintiff dies, his sentence has only been fulfilled. Whether or not Plaintiff may be executed is simply not the subject of this lawsuit and not germane to a harm analysis. As this is the only harm Plaintiff has identified, this factor is undoubtedly contrary to Plaintiff's request.

## IV.  The State and the Public Have a Strong Interest in Seeing the State Court Judgment Carried Out.

The State, as well as the public, has a strong interest in carrying out Plaintiff's sentence. *See Hill*, 547 U.S. at 584. The public's interest lies in executing sentences duly assessed, and for which years of judicial review have failed to find reversible error. Indeed, Plaintiff has already passed through the state and federal collateral review process and has had two previous execution

dates that have been stayed. The public's interest is not advanced by postponing Plaintiff's execution any further, and the State opposes any action that would cause further delay. *Martel v. Clair*, 565 U.S. 648, 662 (2012) ("Protecting against abusive delay *is* an interest of justice.") (emphasis in original).

Plaintiff was convicted and sentenced in 2004. For the past eighteen years he has actively challenged his conviction and sentence. Plaintiff has been represented by current lead counsel for the last nine of those years. However, even though he passed the point of filing a clemency petition during the lead up to two previous scheduled executions, at no point during this time did Plaintiff's counsel deem it necessary to have defense experts conduct a psychological evaluation. After eighteen long years of litigation, justice should no longer be denied.

Moreover, it bears repeating it is no secret that "capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of a sentence of death." *Rhines*, 544 U.S. at 277–78. Thus, "[t]he federal courts can and should protect States from dilatory or speculative suits[.]" *Hill*, 547 U.S. 585. Beatty's dilatoriness requires the summary denial of his stay motion.

## CONCLUSION

For the foregoing reasons, the Defendants ask this Court to deny Plaintiff's Motion for Preliminary Injunction and dismiss Plaintiff's lawsuit. *See*, *e.g.*, *Bible v. Davis*, 4:18-CV-1893, 2018 WL 3068804, at *11 (S.D. Tex. Jun. 21, 2018) ("Because this lawsuit cannot proceed without a stay of [Plaintiff]'s execution date, dismissal of the action is warranted.). Alternatively,

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Rachel L. Patton
RACHEL L. PATTON*
Assistant Attorney General
State Bar No. 24039030

*Lead Counsel

P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936–1400
Facsimile No. (512) 936–1280

ATTORNEYS FOR RESPONDENT

16

## CERTIFICATE OF SERVICE

I do hereby certify that on October 31, 2022, I electronically filed the forgoing pleading with the Clerk of the Court for the United States District Court, Southern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to the following counsel of record, who consented in writing to accept the Notice as service of this document by electronic means:

Scott Smith
P.O. Box 354
Sherman, TX 75091-0354
903-868-8686
Email: scottsmithlawyer@gmail.com

Jeremy Schepers
Office of the Federal Public Defender
Northern District of Texas
525 Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
Email: jeremy_schepers@fd.org

s/ Rachel L. Patton
RACHEL L. PATTON
Assistant Attorney General