United States District Court
Southern District of Texas
**ENTERED**
November 04, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRACY LANE BEATTY, | § § § | CIVIL ACTION NO. 4:22-cv-03658 |
| Plaintiff, | § § § | |
| vs. | § § § | JUDGE CHARLES ESKRIDGE |
| BRYAN COLLIER, *et al*, | § § § | |
| Defendants. | § | |

OPINION AND ORDER
DENYING PRELIMINARY INJUNCTION
AND DISMISSING ACTION

Plaintiff Tracy Lane Beatty is a Texas death-row inmate scheduled for execution on November 9, 2022. He filed a civil-rights complaint under 42 USC § 1983 on October 22, 2022. Dkt 1. He sues three defendants in their official capacity as representatives of the Texas Department of Criminal Justice, who will be referred to collectively here as *TDCJ*.

The pending motion by Beatty for a preliminary injunction is denied. Dkt 6. This action is dismissed.

1. Background

Beatty strangled his 62-year-old mother two days before Thanksgiving in 2003. A jury convicted him of capital murder. He was sentenced to death and has been on death row since 2004. He has also actively challenged his conviction and sentence in state and federal court for the past eighteen years.

a. Related litigation

Beatty has already unsuccessfully sought federal *habeas* relief. The United States District Court for the Eastern District of Texas appointed Thomas Scott Smith to represent Beatty in August 2013. *Beatty v Director*, No. 4:09-cv-00225-SDJ, Dkt 69, *1 (ED Tex filed August 5, 2022) (unopposed motion to appoint counsel). Smith remains lead counsel to date. Id at *1. The Eastern District of Texas denied *habeas* relief in July 2013. *Beatty v Director, TDCJ-CID*, 2013 WL 3763104, * 17 (ED Tex 2013). The Fifth Circuit denied Beatty's request for a certificate of appealability. *Beatty v Stephens*, 759 F3d 455 (5th Cir 2014).

Beatty has subsequently raised a number of issues in federal court. He's also twice faced execution dates. See *In re Beatty*, 2020 WL 1329145 (Tex Crim App 2020); *Ex Parte Beatty*, 2015 WL 6442730, at *1 (Tex Crim App 2015).

The matters in this lawsuit involve Beatty's preparation for an upcoming execution date on November 9, 2022. A Texas state district court set that execution on June 10, 2022. Dkt 1 at 4. This means that Beatty has had 152 days to prepare for his execution. Attorneys representing an inmate under an execution date must act quickly and zealously. "If an execution date is set, post-conviction counsel should immediately take all appropriate steps to secure a stay of execution and pursue those efforts through all available fora." ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 10.15.1 (rev ed 2003).

Beatty's counsel began an investigation in early August assertedly to serve two purposes: (1) to support *habeas* litigation by investigating a claim that intellectual disability prevents his execution under *Atkins v Virginia*, 536 US 304 (2002); and (2) to present evidence in support of clemency. Dkt 1 at 7. Any investigation into clemency faced a deadline that required any such application to be filed at least 21 calendar days before a scheduled execution. 37 Tex Admin Code § 143.43. But an inmate seeking

successive state *habeas* relief doesn't face any statutory deadline.

In his response to the show-cause order, Beatty claims that he acted within the "expected timeline" and "was within the normal range for conducting *Ford-* or *Atkins-*related evaluations prior to a scheduled execution." Dkt 10 at 5. Counsel confirmed at hearing that Beatty doesn't anticipate (at least at present) raising any incompetency-to-be-executed claim under *Ford v Wainwright*, 477 US 399 (1986).

Lead counsel sought help to investigate mental-health issues. On August 5, 2022, Beatty filed a motion for "the assistance of co-counsel to represent [him] in pursuing remedies that are still available to him." *Beatty v Director*, No. 4:09-cv-00225-SDJ, Dkt 69, *2 (ED Tex filed August 5, 2022). The United States District Court for the Eastern District of Texas appointed the Federal Public Defender's Office for the Northern District of Texas to serve as co-counsel under 18 USC § 3599. Order Appointing Co-Counsel, *Beatty v Director*, No. 4:09-cv-00225-SDJ, Dkt 70 (ED Tex, filed August 9, 2022). Beatty argues that he "has never had an in-person evaluation by a mental health expert conducted by a member of his defense team, including at trial and all subsequent post-conviction proceedings." Dkt 1 at 7. The record is at slight variance, to the extent that the Fifth Circuit has noted that his "trial defense team explained in a hearing that it had obtained the assistance of a psychiatrist and a psychologist but that neither would testify because each believed Beatty to be a future danger to society." *Beatty*, 759 F3d at 460.. Regardless, no attorney for Beatty has raised any mental-health concerns in his appellate or post-conviction legal challenges. His counsel at hearing on the present motion confirmed this.

Counsel arranged for evaluations by two experts, being Doctors Bhushan Agharkar and Daniel Martell. Beatty retained Dr. Agharkar to conduct a neuropsychiatric evaluation and Dr. Martell to conduct a neuropsychological evaluation. The complaint lists various factors that

3

encouraged counsel to seek out those examinations, including Beatty's life-long treatment for a skin disorder which is co-existent with impaired cognitive functioning, a head injury at age five, taking anti-psychotic medication for decades, using medication for people with bipolar disorder, and more-recent psychological treatments in prison. Dkts 1 at 6–7 & 6 at 2. Beatty's counsel at hearing emphasized in particular an acute mental-health episode (visual and auditory hallucinations) that happened in May 2022, for which he's since taken medication used to treat the symptoms of schizophrenia.

TDCJ approved both examinations. In late August or early September 2022, both experts informed counsel that Beatty's hands would need to be unrestrained by handcuffs for portions of their examinations. Dkt 1-1 at 7, 9–10. But as recently observed by the Fifth Circuit, "Beginning in 2021, the Texas Department of Criminal Justice started allowing an inmate to be unshackled during an expert evaluation only when a court order has been obtained." *Beatty v Lumpkin*, 2022 WL 16628396, *5 (5th Cir 2022) (Richman, Chief Judge, concurring). This isn't the product of any official written policy. Dkt 1-1 at 5. TDCJ instead has an informal policy that "[f]or security and liability purposes . . . the Texas Department of Criminal Justice (TDCJ) will only allow an inmate to be unshackled during an expert evaluation upon showing of a court order." Respondent's Unopposed Motion to Compel the Texas Department of Criminal Justice to Unshackle Petitioner's Hands During Expert Evaluation, *Washington v Lumpkin*, No. 4:07-cv-721, Dkt 226 (SD Tex filed Feb 15, 2022).

Beatty hasn't requested any order from the state courts that would allow for examination without handcuffs. He instead argues that it's been standard practice for attorneys to request orders from federal courts, which he asserts are routinely granted.

On September 2, 2022, Beatty filed a motion in his closed federal *habeas* action in the Eastern District of Texas. That motion relied on a single statutory argument that counsel are "unable to discharge their responsibilities

4

to Mr. Beatty under [18 USC] § 3599 if he is unable to participate in the upcoming expert evaluations." Opposed Motion to Compel the Texas Department of Criminal Justice to Unshackle Petitioner's Hands During Expert Evaluations, *Beatty v Director*, No. 4:09-cv-00225-SDJ, Dkt 72, *2 (ED Tex, filed September 2, 2022). The State responded with several arguments, including that § 3599 didn't authorize the relief Beatty requested; no live case was pending before the Eastern District; recent Supreme Court authority limited a *habeas* court's ability to require deviation from prison safety protocol; and any case in which the State had assented to a similar request was under different circumstances. Response in Opposition to Petitioner's Motion to Compel TDCJ to Unshackle Petitioner's Hands During Expert Evaluations, *Beatty v Director*, No. 4:09-cv-00225-SDJ, Dkt 74, *2 (ED Tex, filed September 12, 2022).

On September 16, 2022, the Eastern District dismissed Beatty's motion because the federal appointment-of-counsel statute didn't authorize the action he requested. *Beatty v Lumpkin*, 2022 WL 5417480, *3 (ED Tex 2022). The Fifth Circuit affirmed on November 2, 2022, holding that § 3599 didn't provide authority to force a handcuff-free examination.

Beatty in the meantime proceeded with scheduled mental-health examinations by his experts. Dr. Martell conducted his examination on September 19, 2022. Dkt 1-1 at 13. Dr. Agharkar conducted his examination on September 22, 2022. Both examinations proceeded with Beatty handcuffed. Id at 18.

Only about a month then remained before the clemency petition deadline. Beatty's experts prepared letters (dated October 12 and 15, 2022) within a week of the clemency deadline. Both experts described how the restraints on Beatty's movement impaired their ability to conduct a full examination. Dkt 1-1 at 12, 18. Beatty then timely filed a petition for clemency on October 19, 2022. Dkt 1 at 14. That petition remains pending.

      b.   This lawsuit

Beatty filed this lawsuit in the Southern District of Texas on October 21, 2022. Dkt 1. This is so even though the mental-health evaluations occurred in the Eastern District of Texas. Likewise are of the offices of Defendant Warden Daniel Dickerson, the Senior Warden of the Polunsky Unit who "authorizes or condones the unconstitutional polices or practices at issue." Dkt 1. Even so, this Court has jurisdiction, and Defendants haven't requested transfer. See 28 USC § 1391(b) (setting out venue requirements).

According to Beatty's complaint, participating in the neuropsychiatric and neuropsychological examinations without handcuffs has "frustrated and impeded [his] ability to present information in support of clemency and ability to pursue available habeas litigation, causing injury to him." Dkt 1 at 13. His complaint doesn't challenge any official prison policy. Beatty also doesn't allege any substantive constitutional right to a handcuff-free examination. Beatty's complaint instead raises five grounds for relief as follows:

- o *Claim One:* violation of Beatty's Right to Equal Protection by arbitrarily treating him as a class of one. Dkt 1 at 16.
- o *Claim Two:* violation of Beatty's right to Equal Protection by discriminating against him based on gender. Id at 17.
- o *Claim Three:* violation of Beatty's right to Due Process by interfering with his clemency petition. Id at 18.
- o *Claim Four:* violation of Beatty's right to access the courts. Id at 19.
- o *Claim Five:* violation of Beatty's right to counsel. Id at 20.

Beatty has also moved for a preliminary injunction to stay his execution and thus allow a later, handcuff-free examination to go forward. Dkt 6.

An order to show cause was entered requiring Beatty to provide additional information about his claims. Dkt 8.

Beatty filed a response. Dkt 13. Relatedly, in the Fifth Circuit's recent opinion on appeal from the Eastern District, it observed that the district court would have been justified in denying the motion because Beatty had delayed in seeking relief. *Beatty*, 2022 WL 16628396, *4.

The Court held a hearing on November 4, 2022. The parties' responsiveness to questions at hearing greatly clarified their arguments in briefing.

### 2. Analysis

To address procedural aspects related to the complaint, the Court entered a show-cause order on October 25, 2022. Dkt 8. This required Beatty to brief six issues: (1) his parallel litigation, (2) timing, (3) mootness, (4) constitutional authority, (5) statutory authority, and (6) exhaustion. Both parties filed position papers on those points. See Dkts 10 & 13. This will be addressed first to the extent necessary, followed by consideration of the motion for preliminary injunction.

#### a. The complaint and show-cause order

As just noted, the show-cause order called for briefing on six points. Whether dismissal is warranted will be addressed here only as to timeliness and exhaustion.

##### i. Timeliness

The state district court gave Beatty 152 days to prepare for his execution. See *In re Beatty*, 2022 WL 16640082 at *1 (Tx Crim App 2022). Beatty filed this lawsuit with only eighteen days remining. Dkt 1. Whether by intention or not, this means that Beatty delayed until such time that the only effective remedy this Court could provide would be a stay of his execution. This inaction and delay raises a question of whether Beatty deserves the exercise of equity in his behalf.

The Supreme Court expresses concern that "not all petitioners have an incentive to obtain federal relief as quickly as possible. In particular, capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death." *Rhines v Weber*, 544 US 269, 277-78 (2005). Accordingly, "a

number of federal courts have invoked their equitable powers to dismiss suits they saw as speculative or filed too late in the day." *Hill v McDonough*, 547 US 573, 584 (2006). The Supreme Court also recognizes the significant problems created when death-row inmates delay filing a § 1983 lawsuit, stating that "federal courts can and should protect States from dilatory or speculative suits." Id at 585. Federal precedent does "not for a moment countenance 'last-minute' claims relied on to forestall an execution." *Nance v Ward*, 142 S Ct 2214, 2225 (2022).

As such, it's appropriate to consider whether the timing of Beatty's lawsuit in relation to his execution date "constitutes a dilatory tactic and therefore warrants no equitable relief." *Bible v Davis*, 739 F Appx 766, 770 (5th Cir 2018); *Ramirez v McCraw*, 715 F Appx 347, 351 (5th Cir 2017) (in balance of equity, "dilatory behavior" may weigh heavily against plaintiff).

Beatty argues that he "has been diligent in pursuing the remaining legal avenues available to him, including clemency and potential successive habeas litigation. He did so in a time frame that he had no reason to believe would leave him litigating down to the wire." Dkt 10 at 5. Beatty argues that he "should not be faulted for being unable to anticipate that Defendants would treat him differently than other similarly situated death row inmates." Dkt 10 at 6.

To the contrary, Beatty bears responsibility for not pursuing these mental-health issues previously. He alleges that he has "a long history of mental illness." Dkt 6 at 2. He also alleges that he may be intellectually disabled, which is likely a life-long condition. But throughout his extensive state and federal litigation—including last-minute litigation when facing two previous execution dates—he never raised any claim relating to his mental health. The available record suggests that TDCJ lists Beatty's IQ in the average range. Dkt 6 at 22.

Of further concern, Beatty's lead counsel (who isn't counsel in this action) has represented him for nine years, litigating various *habeas* issues and handling two previous

8

execution dates. For example, see *Beatty v Stephens*, 759 F3d 455 (5th Cir 2014); *In re Beatty*, 2020 WL 1329145 (Tx Crim App 2020). Yet no allegation of any degree of mental illness has appeared before now. And counsel has never sought a mental-health evaluation until only a short time remained before his execution.

As noted above, Beatty focuses his arguments on an acute mental-health episode in May 2022. But any claim of intellectual disability under *Atkins* isn't related to his recent episode. Instead, evidence of any intellectual disability would have long been in existence, including during the prior decade when he's been represented by appointed counsel. Regardless, even when the state district court soon thereafter set the pending execution date, Beatty didn't schedule any mental-health evaluation until barely a month before his clemency petition was due. Again, this means that Beatty's legal team waited until only shortly before his execution date to begin investigations which he could—and should—have commenced and completed long before.

Beatty can't create the need for exigency and then complain about the consequences. In such light, it can be easily seen that the alleged crisis brought about by not removing Beatty's handcuffs is the consequence of waiting so long to investigate his mental health. Beatty should have sought the complained-of examinations long before.

Beatty also made the situation worse by waiting to seek relief from a court. He didn't immediately seek an order from a state or federal court when TDCJ officials didn't allow his mental-health examinations to proceed without handcuffs. In fact, he's never at all asked the state courts to require a handcuff-free examination. See *Beatty*, 2022 WL 16628396, \*6 (Richman, Chief Judge, concurring) (suggesting that federal court shouldn't consider issue until inmate has first approached state courts). Instead, Beatty filed a motion in his closed *habeas* case, even though that court had no authority to grant his requested relief. Id at \*4.

9

Beatty then waited further to initiate this lawsuit. At some point in September, Beatty knew that he would be handcuffed during the examination. But he says that he "could not have filed this action until his clemency petition was filed." Dkt 10 at 6. Beatty doesn't square this argument with his repeated insistence that he would use the results of an examination for clemency and *habeas* claims. Nor does he explain why any challenge related to *habeas* wasn't ripe earlier.

Beatty also doesn't challenge the clemency process itself. He challenges limitations on the investigation *before* clemency was due. The injury Beatty allegedly suffered became ripe at least as soon as he knew that he couldn't have an examination without handcuffs.

The urgency in this case is thus a matter of Beatty's own creation. Filing this lawsuit only days before an execution lessens the credibility of his arguments and raises the stated concerns above as to procedural gamesmanship. As noted by a respected treatise on federal procedure, "A long delay by plaintiff after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction." See Charles Alan Wright & Arthur R. Miller, et al, 11a Federal Practice & Procedure § 2948.1 (3d ed, April 2017 update).

The Fifth Circuit found as much in the appeal from Beatty's motion in the Eastern District, which he filed even earlier than this lawsuit:

> The docket on which Appellant entered his motion to compel was associated with a federal habeas petition that was dismissed with prejudice in July of 2013. And that denial of post-conviction relief came nearly a decade after Appellant's murder conviction, which occurred in 2004. Now, eighteen years later, Appellant makes the bare allegation that receiving psychological services—specifically while unshackled—

10

> would assist with a clemency application or other litigation.
>
> Intentional delay tactics near execution dates are commonplace enough that our court has a rule specifically addressing the timing of challenges to death sentences and/or execution procedures. See 5th Cir R 8.10 ("Counsel who seek a certificate of appealability, permission to file a successive petition, or an appeal from a district court judgment less than 7 days before the scheduled execution must attach to the proposed filing a detailed explanation stating under oath the reason for the delay."). Because Appellant has provided no legitimate justification as to why this appeal is anything but a delay tactic, the district court would not have abused its discretion in denying relief even if section 3599 could grant jurisdiction to make that decision.

*Beatty*, 2022 WL 16628396, *4.

The Fifth Circuit's logic applies with full force in this lawsuit. Beatty's pleadings describe mental-health concerns that would have been apparent to counsel for many years. Counsel never sought any evaluation before Beatty' execution became imminent. Even if using the acute mental-health episode in May 2022 as a decisive event, counsel didn't have Beatty examined for several months afterward. Beatty's delay in investigating mental-health concerns—and then his delay in filing this lawsuit—provides an independent basis to dismiss this case. *Bible*, 739 F Appx at 770.

### ii. Exhaustion

The Prison Litigation Reform Act requires inmates to exhaust administrative remedies prior to filing suit. 42 USC § 1997e(a).

Texas has a two-step prison grievance process. "The inmate first files a Step 1 grievance, in which he must state the grievance and his proposed relief. If relief is denied, the inmate may then file a Step 2 grievance appealing the denial." *Moussazadeh v Texas Department of Criminal Justice*, 703 F3d 781, 788 (5th Cir 2012). "[A] prisoner must pursue a grievance through both steps for it to be considered exhausted." *Johnson v Johnson*, 385 F3d 503, 515 (5th Cir 2004).

Even capital inmates challenging their imminent execution "must exhaust available remedies before bringing a § 1983 action challenging the conditions of their confinement." *Nelson v Campbell*, 541 US 637, 650 (2004); but see *Murphy v Collier*, 942 F3d 704, 709 (5th Cir 2019) (refusing to vacate stay because Supreme Court had implicitly rejected exhaustion defense). Requiring inmates to exhaust remedies through the prison grievance process gives officials "a fair opportunity to address the problem that will later form the basis of the lawsuit." *Johnson*, 385 at 517. To properly exhaust, a prisoner must "pursue the grievance remedy to conclusion." *Wright v Hollingsworth*, 260 F3d 357, 358 (5th Cir 2001).

Beatty didn't complete the prison grievance process before filing suit. He did file a Step 1 grievance on October 3, 2022. Dkt 10 at 22. But it was returned for not following proper prison protocol. He then filed another Step 1 grievance the same day that he filed this lawsuit. Dkt 10 at 23. It doesn't appear of record that Beatty has filed a Step 2 grievance. This means that he hasn't exhausted his state remedies. This requires dismissal, for the Fifth Circuit clearly holds, "Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v Seal*, 702 F3d 785, 788 (5th Cir 2012).

Beatty asks that exhaustion be excused because it "operates as a simple dead end with grievance officials unable to provide relief in this instance." Dkt 10 at 16. Beatty in essence argues that availing himself of the

grievance process is futile because he needs a court order before TDCJ will allow a handcuff-free examination.

Courts are wary to find a futility exception to the PLRA. Indeed, the Supreme Court has noted that it will "not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v Churner*, 532 US 731, 741 n6 (2001); see also *Thoele v Collier*, 2022 WL 703189, at \*2 (5th Cir 2022) (finding exhaustion necessary even if procedures were lengthy and unlikely to provide relief).

Beatty points to two recent cases in which courts have lightened the burden of the exhaustion requirement. See *Ramirez v Collier*, 142 S Ct 1264 (2022) (inmate completed exhaustion after filing suit), and *Murphy*, 942 F3d at 709 (communications between counsel and prison administrators accomplished same effect as exhaustion). But exhaustion hasn't been completed here, even if late. And Beatty pleads no facts and presents no evidence to establish that administrative review is (or was) futile or unavailable. To the contrary, Defendants suggest that the grievance process at least had the potential to provide accommodations that would meet Beatty's request. Dkt 11 at 11. And nothing indicates sufficiency of any informal communications with prison officials. In short, similar circumstances aren't presented on the record in this case.

Beatty could have received some relief through the grievance process. Defendants explained at hearing that accommodations could have been considered upon request during the grievance process. For example, a handcuff-free examination could potentially have proceeded without close personal contact or proximity, such as Beatty unrestrained in a separate room with communication across a glass partition, or even isolated within a holding pen within the same room as the examiners. Beatty's counsel confirmed that no formal or informal requests for such accommodation were requested. Beatty thus hasn't shown that the grievance process was entirely futile. See *Valentine v Collier*, 978 F3d 154, 160-61 (5th Cir 2020) (requiring exhaustion if "some relief" is available).

13

This case is subject to dismissal because Beatty didn't follow prison procedures to exhaust his administrative remedies.

### b. Request for preliminary injunction

Beatty requests entry of a preliminary injunction that would effectively stay his execution. Dkt 6.

A preliminary injunction is an "extraordinary remedy." *Byrum v Landreth*, 566 F3d 442, 445 (5th Cir 2009). A federal court may generally grant a preliminary injunction only on a movant's showing as to the familiar factors of (i) a substantial likelihood of success on the merits; (ii) a substantial threat of irreparable harm; (iii) the balance of equities tips in the applicant's favor; and (iv) an injunction is in the public interest. *Ramirez*, 142 S Ct at 1275. Failure by the movant to "clearly carry the burden as to all four elements" requires a denial of a requested injunction. *Guy Carpenter & Co. v Provenzale*, 334 F3d 459, 464 (5th Cir 2003). But of those factors, the likelihood of success on the merits and irreparable harm are "the most critical." *Nken v Holder*, 556 US 418, 434 (2009).

### i. Substantial likelihood of success

Defendants argue that Beatty can't show a substantial likelihood of success on both procedural grounds and on the merits. This is so, and his failure to meet the first prong "is fatal to [his] application for a preliminary injunction." *Texas Medical Providers Performing Abortion Services v Lakey*, 667 F3d 570, 584 (5th Cir 2012).

As an initial matter, as established above, Beatty hasn't exhausted applicable prison remedies. Beatty only engaged the prison grievance process after filing suit and hasn't completed it. Such failure to follow proper procedure is alone sufficient to deny injunctive relief.

But Beatty also hasn't shown that he can succeed on the merits. He raises five claims. But running below the surface of each is an obvious defect—Beatty neither argues nor can show a constitutional right to participating in mental-health examinations without handcuffs or other restraints. Indeed, Beatty admits that he "does not claim a

freestanding constitutional right to the removal of handcuffs in all circumstances." Dkt 10 at 9.

Beatty focuses much of his arguments on clemency. No constitutional right to clemency exists. *Fleming v Upton*, 745 F Appx 544, 545 (5th Cir 2018) (citing *Connecticut Board of Pardons v Dumschat*, 452 US 458, 464-67 (1981)). If a state establishes a clemency process, it must set some "minimal procedural safeguards." *Ohio Adult Parole Authority v Woodard*, 523 US 272, 289 (1998). "But these requirements really are *minimal*" and not impinged upon by the issues in this case. *Turner v Epps*, 460 F Appx 322, 331 (5th Cir 2012). And no precedent includes within these minimal safeguards that expert evaluations be of entirely unrestrained subjects. In fact, the Fifth Circuit has found that "the inability to access experts," even when it "may potentially result in a less effective and compelling clemency," doesn't pose due process concerns. Ibid

Beatty hasn't made a substantial likelihood of showing that his clemency proceedings didn't meet minimal constitutional protections. Indeed, denial of handcuff-free examinations didn't prevent Beatty from seeking clemency. He in fact filed his clemency petition and included the tentative (but incomplete) assessments by his experts.

Absent any constitutional protection guaranteeing fully unrestrained hands during a mental-health evaluation, Beatty pursues slightly different angles. He claims that Defendants violated his right to access the courts so that he could raise an *Atkins* claim. Dkt 1 at 9, 14–15. But such access-to-the-courts argument depends on his ability to show an underlying constitutional violation. True, Dr. Martel's report notes that additional neuropsychological testing "could indicate indicators of intellectual disability." Dkt 1-1 at 16. But it gives no stronger statement that Beatty does—or could—suffer from intellectual disability. An inmate must prove an actual injury and an actual legal claim to establish a meritorious access-to-courts claim. See *Lewis v Casey*,

518 US 343, 350-52 (1996). As such, Beatty's claim is far too speculative to warrant injunctive relief. "One is not entitled to access to the courts merely to argue that there might be some remote possibility of some constitutional violation." *Whitaker v Livingston*, 732 F3d 465, 467 (5th Cir 2013).

Beatty also complains of unequal treatment, suggesting that TDCJ created a "class of one" by treating him differently than other inmates to have had handcuff-free examinations, and that he is the victim of gender discrimination because women have been examined without handcuffs. Dkt 1 at 17–18. He cites no authority under which courts have rendered judgment in favor of a plaintiff on similar claims. Additionally, he hasn't shown that he's similarly situated to other inmates. TDCJ began requiring a court order for handcuff-free contact examinations in 2021. See *Beatty*, 2022 WL 16628396, *5 (Richman, Chief Judge, concurring). Beatty only points to one inmate—Melissa Lucio—who had an examination without handcuffs after that date. But her circumstances were different. While she was technically in the same room as the expert, she was separated in a metal cage and thus didn't have a contact visit. Dkt 11 at 11. Beatty hasn't shown a variance for any inmate since 2021 as to the requirement for a court order before a contact visit.

For their part, Defendants persuasively argue that prison administrators have good cause for worrying about permitting a contact visit without handcuffs. Dkt 11 at 10. Quite clearly, Beatty's claims raise a question of prison administration and security. Federal courts generally defer to a prison's decisions about how best to secure their facilities. The Supreme Court long ago stated, "Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Hudson v McMillian*, 503 US 1, 6 (1992) (quotations omitted) (cleaned up).

Requiring handcuffs during a contact visit is, quite simply, a rational security concern. *See Jackson v Cain*, 864 F2d 1235, 1243 (5th Cir 1989). And prison administrators have good reasons for limiting contact visits with Beatty in particular, for he has a long history of prison disciplinary problems. Defendants observe:

> Plaintiff's disciplinary record contains more than forty violations in the last eighteen years, including multiple assaults on correctional officers, threats of violence, disobeying orders, possession of contraband, using his arms and legs to cause various problems with access to his cell, self-inflicted injuries, and public masturbation. That Defendants would have heightened security concerns about unshackling Plaintiff's hands in light of his history of violent and incorrigible behavior should come as no surprise.

Dkt 11 at 10. Even with the limited record at present, it's clear that Beatty could pose a security concern without handcuffs.

Beyond this, Beatty's experts say that his examination needed to be without handcuffs. Dkt 1-1 at 9–10, 12–16. But notably, they didn't say it needed to be a contact visit. And Beatty neither formally nor informally requested a non-contact visit. Instead, Beatty filed this lawsuit without exhausting administrative remedies or looking for some other informal resolution of the issues. Dkt 1. According to Defendants, TDCJ allowed the mental-health examination Melissa Lucio (referred to above) to proceed without handcuffs because she had a non-contact visit in which she was separated from the expert in a separate holding cell. Defendants state, "Had Plaintiff bothered with any attempt at informal resolution before seeking a federal court order, or attempted to exhaust the administrative grievance process, such an accommodation might have been reached which would have eliminated the need for a

17

lawsuit and more importantly a stay of execution." Dkt 11 at 11.

In sum, the differences between the examination Beatty *actually* requested and others that proceeded upon *different* request means that prison officials could legitimately take into account his prior violence as to his requested examination.

Beatty also argues that Defendants have violated his right to counsel under 18 USC § 3599(e). Dkt 1 at 19–20. His parallel litigation in the Eastern District of Texas and the recent decision by the Fifth Circuit relies on the same basic facts and rejected that legal argument. *Beatty*, 2022 WL 16628396, *4. Beatty hasn't identified any meaningful difference between the claim denied by the Fifth Circuit and that in the instant case. Summary denial of a requested preliminary injunction on such claim is appropriate.

For these reasons, Beatty hasn't shown a substantial likelihood of success on the merits.

### ii. Other factors

The ruling as to likelihood of success on the merits is "effectively, dispositive of the motion for stay." *Crutsinger v Davis*, 930 F3d 705, 707 (5th Cir 2019). The parties dispute the assessment of irreparable injury in this context related to gathering information towards an intended clemency petition or potential to raise an *Atkins* claim. Compare Dkt 6 at 19, with Dkt 11 at 14. But even assuming its potential here, other factors as to the balance of equities and the public interest also strongly weigh in Defendants' favor. For example, a stay would plainly prejudice Defendants because Texas has a "strong interest in enforcing its criminal judgments without undue interference from the federal courts." Id at 272-73. As well, the public interest more greatly lies in allowing the State to carry out its otherwise-valid judgment because "protecting against abusive delay is an interest of justice." *Martel v Clair*, 565 US 648, 662 (2012).

Finally, the eleventh-hour nature of Beatty's motion for a preliminary injunction justifies its denial for the same reasons that his complaint faces dismissal. *Bucklew v Precythe*, 139 S Ct 1112, 1134 (2019); *Hill*, 547 US at 584. The Supreme Court holds that there's a "strong equitable presumption against the grant of a stay" in circumstances where "a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Nelson,* 541 US at 650. The Fifth Circuit likewise holds that the "last-minute nature of an application" or an applicant's "attempts to manipulate" the judicial process may be grounds for denial of a stay. *Gomez v United States District Court for Northern District of California*, 503 US 653, 654 (1992).

The request for preliminary injunctive relief will be denied.

### 3. Conclusion

The motion by Plaintiff Tracy Lane Beatty for a preliminary injunction is DENIED. Dkt 6.

It's evident that this case can't proceed without a stay of execution or another form of injunctive relief, given the fast-approaching execution date. The Fifth Circuit has affirmed dismissal with prejudice in similar circumstances. See *Bible*, 739 F Appx at 773; *White v Johnson*, 429 F3d 572, 573-74 (5th Cir 2005).

This case is DISMISSED WITH PREJUDICE.

SO ORDERED.

Signed on November 4, 2022, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge